## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (SOUTHERN DIVISION)

MYNOR MENDEZ CERVANTES
1629 25th Avenue
Adelphi, Maryland 20783

EMILIO ANTONIO LEIVA TORRES
6016 Jefferson Heights Drive
Fairmount Heights, Maryland 20743

DAIRIN DAGOBERTO FUNEZ ROSALES
14522 Mayfair Drive
Laurel, Maryland 20707

EDWIN EZEQUIAS LOPEZ VILLAGREZ
7900 15th Avenue, Apt. 202
Hyattsville, Maryland 20783

BETO MENDEZ
8137 15th Avenue
Hyattsville, Maryland 20783

JOSE FERNANDO ROMERO ARANGO
8706 New Hampshire Avenue
Silver Spring, Maryland 20903

     *Plaintiffs*,

     v.

PANEL AND WINDOW SERVICES LLC
6521 Edgerton Drive
Lanham, Maryland 20706

SERVE: JOSUE CABRERA
     Resident Agent
     6521 Edgerton Drive
     Lanham, Maryland 20706

JOSUE CABRERA
6521 Edgerton Drive
Lanham, Maryland 20706

Case No.: 22-337

DEBRA'S GLASS, INC.
255 North Pleasant Avenue
Dallastown, Pennsylvania 17313

SERVE: THE CORPORATION TRUST, INC.
        2405 York Road, Suite 201
        Lutherville-Timonium, Maryland 21093

BARTON-MALOW COMPANY
26500 American Drive
Southfield, Michigan 48034

SERVE: THE CORPORATION TRUST, INC.
        2405 York Road, Suite 201
        Lutherville-Timonium, Maryland 21093

BARTON MALOW BUILDERS LLC
26500 American Drive
Southfield, Michigan 48034

SERVE: THE CORPORATION TRUST, INC.
        2405 York Road, Suite 201
        Lutherville-Timonium, Maryland 21093

*Defendants.*

# COMPLAINT

Plaintiffs, Mynor Mendez Cervantes ("Plaintiff Mendez Cervantes"), Emilio Antonio Leiva Torres ("Plaintiff Leiva Torres"), Dairin Dagoberto Funez Rosales ("Plaintiff Funez Rosales"), Edwin Ezequias Lopez Villagrez ("Plaintiff Lopez Villagrez"), Beto Mendez ("Plaintiff Beto Mendez"), and Jose Fernando Romero Arango ("Plaintiff Romero Arango") bring this action against Defendants, Panel and Window Services, LLC ("PWS"), Josue Cabrera ("Cabrera"), Debra's Glass, Inc. ("DGI"), Barton-Malow Company and Barton Malow Builders LLC (hereinafter both Barton-Malow entities shall be collectively referred to in singular as "Barton-Malow"), for violations of Plaintiffs' rights under the Fair Labor Standards Act of 1938 ("FLSA"),

29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. §§ 3-415 and 3-427, and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., §§ 3-505 and 3-507.2.

In support, Plaintiffs allege as follows:

**THE PROJECT**

The City of Ocean City, Maryland and the Maryland Stadium Authority ("MSA") participated in a joint effort to expand and modernize the Roland E. Powell Convention Center a/k/a "the Ocean City Convention Center" (hereinafter "the Convention Center"), 4001 Coastal Highway, Ocean City, Maryland 21842. This complaint concerns phase three of that project (hereinafter the "The Project"), which was managed by MSA. The work on The Project began in 2020. The General Contractor was Barton-Malow, which entered into a subcontract with DGI to install panels on the exterior of the Convention Center. DGI entered into a subcontract with PWS, to provide additional workers. Plaintiffs were hired by PWS and utilized by DGI in the performance of DGI's subcontract.

**THE PARTIES**

1.      Plaintiff Mendez Cervantes is an adult resident of Maryland. He was employed on The Project by Defendants PWS, Cabrera and DGI from November 15, 2021, to December 17, 2021, a period of five weeks and one additional workday (November 11, 2021). During the time he was employed on The Project, Plaintiff Mendez Cervantes worked as a Mechanic, installing panels on the exterior of the Convention Center.

2.      Plaintiff Leiva Torres is an adult resident of Maryland. He was employed on The Project by Defendants PWS, Cabrera and DGI from October 18, 2021, to December 17, 2021, a

period of nine weeks. During the time he was employed on The Project, Plaintiff Leiva Torres worked as a Mechanic, installing panels on the exterior of the Convention Center.

3.      Plaintiff Funez Rosales is an adult resident of Maryland. He was employed on The Project by Defendants PWS, Cabrera and DGI from November 16, 2021, to December 17, 2021, a period of one workday less than five weeks. During the time he worked on The Project, Plaintiff Funez Rosales worked as a Mechanic, installing panels on the exterior of the Convention Center.

4.      Plaintiff Lopez Villagrez is an adult resident of Maryland. He was employed by Defendants PWS, Cabrera and DGI from November 15, 2021, to December 17, 2021, a period of five weeks and one additional workday (November 11, 2021). During the time he worked on The Project, Plaintiff Lopez Villagrez was a Mechanic's Helper who assisted the Mechanics in the installation of panels on the exterior of the Convention Center.

5.      Plaintiff Beto Mendez is an adult resident of Maryland. He was employed on The Project by Defendants PWS, Cabrera and DGI from November 16, 2021, to December 11, 2021, a period of one workday less than four weeks. During the time he worked on The Project, Plaintiff Beto Mendez was a Mechanic's Helper who assisted with the installation of panels on the exterior of the Convention Center.

6.      Plaintiff Romero Arango is an adult resident of Maryland. He was employed on The Project by Defendants PWS, Cabrera and DGI from October 18, 2021, to December 10, 2021, a period of eight weeks. During the time he worked on The Project, Plaintiff Romero Arango was a Mechanic's Helper who assisted the Mechanics in the installation of panels on the exterior of the Convention Center.

7.      PWS is a limited liability company organized under the laws of the State of Maryland. PWS's headquarters are located at 6521 Edgerton Drive, Lanham, Maryland 20706,

which is in Prince George's County, Maryland. During the relevant period, PWS employed Plaintiffs within the meaning of the FLSA, the MWHL and the MWPCL because it maintained their employment records, paid their wages, set their rate of pay, hired them, had the authority to terminate their employment and paid them in a manner made unlawful by the FLSA, the MWHL and the MWPCL.

8.      PWS constitutes an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1), as PWS had: (1) employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

9.      Cabrera is an employer of Plaintiffs within the meaning of the FLSA, MWHL and the MWPCL because he is an owner, member, and officer of PWS, who is significantly involved in PWS's business operations. Specifically, (1) he is responsible for creating and enforcing, PWS's policies and procedures governing employee pay, compensation and benefits and overtime pay, (2) he controls the corporate funds of PWS which were used to pay Plaintiffs and he could and did allocate funds as profits, (3) he set and approved the hourly rate for Plaintiffs, the pay days and pay periods and the method by which their pay was computed, (4) he had authority to hire, fire and discipline Plaintiffs and did in fact hire them, (5) he made or approved the decision to engage in the illegal pay practices that are the subject of this law suit in order to make PWS more profitable, (6) he paid Plaintiffs and issued checks to them that were drawn on insufficient funds, and (7) he maintained Plaintiffs' employment records at the corporate offices of PWS, which are located in his home.

10.     DGI is a corporation organized under the laws of the State of Pennsylvania. As of August 30, 2021, DGI was licensed to do business in Maryland as a foreign corporation. DGI, Cabrera and PWS jointly employed Plaintiffs within the meaning of the FLSA, the MWHL and the MWPCL because: (1) formally or as a matter of practice, DGI and PWS jointly determined, shared, or allocated the power to direct, control, or supervise Plaintiffs, by direct or indirect means; (2) both PWS and DGI formally or as a matter of practice, determined, shared, or allocated the power to— directly or indirectly—hire or fire Plaintiffs or modify the terms or conditions of their employment; (3) the work Plaintiffs performed on The Project was controlled by both PWS and DGI; and (4) formally or as a matter of practice, both PWS and DGI determined, shared, or allocated responsibility over functions ordinarily carried out by an employer, such as setting the Plaintiffs' schedule and hours, supervising them, providing them with temporary housing, and providing them with equipment, tools, and materials necessary for them to complete their work. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017).

11.     DGI constitutes an "Enterprise Engaged in Commerce" within the meaning of 29 U.S.C. § 203 (s)(1), as DGI had: (1) employees engaged in commerce or the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce; and (2) a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

## VENUE

12.     Venue is proper in this judicial district under 28 U.S.C. § 1391 (b)(1) because Defendants PWS and Cabrera both reside in Prince George's County, Maryland which is located in the judicial district of Maryland and within the Southern Division. And Defendants DGI and Branon-Malow are deemed to be residents of the State of Maryland for venue purposes because they are both subject to the Court's personal jurisdiction, as they are licensed to do business in Maryland, they conduct business in Maryland and their contact with Maryland has given rise to the claims at issue in this case. *See id*. § 1391 (c)(2).

## JURISDICTION

13.     The jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 29 U.S.C. § 217. The Court has subject matter jurisdiction under § 1331 because Plaintiffs' claims involve federal questions and the Court has pendant jurisdiction over the Plaintiffs' state law claim under 28 U.S.C. § 1367.

14.     This Court has *in personam* jurisdiction over Defendants because they all conduct business in the State of Maryland and because all of the events giving rise to these claims occurred in Maryland.

## STATEMENT OF FACTS

15.     Cabrera and/or his bother Noe Cabrera (an agent of PWS) hired some of the Plaintiffs to work on The Project beginning on Monday, October 18, 2021. As The Project progressed and as DGI needed additional workers to timely perform its obligations under the subcontract, Cabrera and/or Noe Cabrera hired the remaining Plaintiffs. Cabrera and/or Noe Cabrera promised to pay each Plaintiff at the rate of $37 for the first forty hours of work and $55.50 per hour for all overtime hours (those in excess of 40 hours within a workweek). In addition,

Cabrera and/or Noe Cabrera promised each Plaintiff that they were entitled to a 30-minute paid lunch break each day at the rate of $37 per hour. Cabrera in fact issued and signed checks made payable to Plaintiffs which were consistent with the compensation he promised them. However, the vast majority of the checks Cabrera issued were worthless and fraudulent, as they were drawn on insufficient funds.

16.     Plaintiffs all reside in the Washington Metropolitan Area ("the WMA") and were required to engage in significant uncompensated travel time (three hours each way) twice per week. Plaintiffs would typically leave their homes in the WMA on Sunday afternoon and arrive in Ocean City approximately three hours later. DGI paid for Plaintiffs to stay in a hotel in Ocean City from Monday through Friday while they were working. After they finished work on Friday afternoon, Plaintiffs would travel back to their homes in the WMA, which was another three-hour trip. In this lawsuit, Plaintiffs *are not* seeking compensation for their travel time to and from Ocean City Maryland.

17.     Plaintiffs worked on The Project anywhere from four to nine weeks. During that time frame, Cabrera, PWS and DGI did not pay Plaintiffs in accordance with the MWPCL. Cabrera, PWS and DGI were required to set regular pay periods and to pay Plaintiffs their wages either every two weeks or twice per month. Md. Code Ann. Labor & Employment § 3-502 (a). PWS, Cabrera and DGI were required to pay Plaintiffs' wages either by United States Currency or "by a check that, on demand, is convertible at face value into United States currency." *Id*. § 3-502 (b).

18.     PWS and Cabrera set regular pay periods and a regular pay day, as the checks that they issued demonstrated. The pay periods were weekly and covered Monday through Friday. The paydays were the Friday at the end of the work week (Fridays), as the checks issued to Plaintiffs by PWS and Cabrera indicated. However, PWS and Cabrera would issue checks weeks or months late,

give instructions to Plaintiffs not to deposit or cash the checks until days or weeks after delivery and in many instances, the checks were worthless as the bank account on which they were drawn on insufficient funds.

19.     At some point during The Project, DGI contacted Cabrera to procure additional workers. For all practical purposes, DGI ran the portion of The Project involving the installation of external panels. Typically, Cabrera was only on the job site once a week and it was usually on Fridays. Cabrera's brother Noe Cabrera was present at the job site every day, but he largely worked alongside the Plaintiffs, performing the functions of a Mechanic and he followed the instructions given to him by DGI's foremen, who supervised Plaintiffs indirectly through communications with Noe Cabrera. DGI personnel would decide how many workers were needed, the hours and days that Plaintiffs would work, whether they would work overtime and where, when and how Plaintiffs would perform specific tasks. Typically, DGI's foremen would indirectly supervise Plaintiffs by passing instructions on to Noe Cabrera who would then in turn pass the instructions on to Plaintiffs. In addition, DGI provided all of the materials used by Plaintiffs to complete their work. Moreover, the equipment and tools used by Plaintiffs, such as scaffolding, ladders and cranes, were all provided by DGI. Finally, DGI arranged and paid for Plaintiffs' hotel accommodations in Ocean City.

20.     Plaintiffs were employees of PWS, Cabrera and DGI and not independent contractors for several reasons. First, PWS, Cabrera and DGI collectively exercised a very high degree of control over the Plaintiffs, including telling them where, when and how to do their work, including the tasks they needed to perform and the manner in which the work needed to be performed. PWS and DGI also conducted safety meetings each workday to discuss the safety rules that Plaintiffs were required to follow. And DGI provided all the tools, equipment and materials

that Plaintiffs utilized in performing their work. Second, Plaintiffs made no investment in equipment or material and none of the Plaintiffs hired other workers to assist them with their work on The Project. Third, the work that Plaintiffs performed for Cabrera, PWS and DGI required only a modest amount of skill. Fourth, Plaintiffs' financial success on The Project had nothing to do with their managerial skill and was solely dependent on the number of hours which PWS, Cabrera and DGI allowed Plaintiffs to work and whether they paid Plaintiffs their promised wages. In short, Plaintiffs were wholly dependent on PWS, Cabrera and DGI for compensation, rather than being in business for themselves. Fifth, although the working relationship between Plaintiffs and PWS, Cabrera and DGI was not permanent, it ranged from four to nine weeks and Plaintiffs devoted their full time and attention to The Project while working on it and could not take on other work during that period of time. Finally, the services rendered by Plaintiffs were an integral part of the business carried on by PWS, Cabrera and DGI. *See McFeeley v. Jackson Street Entertainment, LLC*, 825 F.3d 235, 241 (4th Cir. 2016).

21.    During the time Plaintiffs were employed by PWS, Cabrera and DGI, they worked the following weeks and/or days, received the following compensation and are owed the following amounts of wages and liquidated damages:

## MYNOR MENDEZ CERVANTES

22.     Mynor Mendez Cervantes', workweeks, hours, wages and damages:

| | A | | | Sum of A | | B | | C | B minus C |
|---|---|---|---|---|---|---|---|---|---|
| Work Week End Date | Hours Worked per Week | Regular Pay Rate | OT Pay Rate | Hours Earned at Regular Rate | Hours Earned at Overtime Rate | Total Amount of Wages Earned | Amount on Employer's Check | Amount Paid by Employer | Amount Still Owing |
| 11/13/2021 | 10.0 | $37.00 | $55.50 | 10.0 | 0.0 | $370.00 | $370.00 | $370.00 | $0.00 |
| 11/20/2021 | 0.0 | $37.00 | $55.50 | 0.0 | 0.0 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/27/2021 | 36.0 | $37.00 | $55.50 | 36.0 | 0.0 | $1,332.00 | $1,332.00 | $0.00 | $1,332.00 |
| 12/04/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $1,880.00 | -$2.25 |
| 12/11/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| 12/18/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| Total | | | | 168.5 | 5.5 | $ 6,539.75 | | $ 2,250.00 | $ 4,289.75 |

| Date on Check | Date Check Tendered | Amount Owed | More Than Two Weeks Late (Y/N) | Liquidated Damages |
|---|---|---|---|---|
| 11/12/2021 | 11/30/2021 | $370.00 | N | $0.00 |
| 11/26/2021 | never | $1,332.00 | Y | $2,664.00 |
| 12/3/2021 | 12/19/2021 | $1,877.75 | Y | $3,755.50 |
| 12/10/2021 | never | $1,480.00 | Y | $2,960.00 |
| 12/17/2021 | never | $1,480.00 | Y | $2,960.00 |
| Total | | | | $12,339.50 |
| Total Damages (Unpaid Wages + Liquidated Damages) | | | | $16,629.25 |

23.     Plaintiff Mendez Cervantes worked a total of four weeks and one day on The Project. He did not work on the project during the week ending November 20, 2021, because he was working on a different project for PWS in Washington, D.C. All of Plaintiff Mendez Cervantes' checks contained an issuance date of the Friday of the end of each respective work week. He received a check for the single day of work during the week ending on November 13 and was able to cash it successfully. On December 19, 2021, Plaintiff Mendez Cervantes received four checks for the weeks ending on November 27, December 4, December 11, and December 18. Cabrera informed him he could only cash one check (the largest check for the December 4 week) and that he could not attempt to cash the other checks until further notice. He successfully cashed the December 4 check on or about December 19, but since the payment was made on December 19, 2021, more than two weeks late, it was in violation of Md. Code Ann. Labor & Employment §§ 3-502, 3-505

and 3-507.2, entitling him to liquidated damages. Although Cabrera informed Plaintiff Mendez

Cervantes that he could cash the remaining three checks after January 7, 2022, when he attempted

to do so, the three remaining checks were rejected due to insufficient funds in violation of §§ 3-

502, 3-505 and 3-507.2 and entitling Plaintiff Mendez Cervantes to liquidated damages.

### EMILIO ANTONIO LEIVA TORRES

24.     Emilio Antonio Leiva Torres' workweeks, hours, wages and damages:

| | A | | | Sum of A | | B | | C | B minus C |
|---|---|---|---|---|---|---|---|---|---|
| Work Week End Date | Hours Worked per Week | Regular Pay Rate | OT Pay Rate | Hours Earned at Regular Rate | Hours Earned at Overtime Rate | Total Amount of Wages Earned | Amount on Employer's Check | Amount Paid by Employer | Amount Still Owing |
| 10/23/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $1,880.00 | -$2.25 |
| 10/30/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $1,480.00 | $0.00 |
| 11/06/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $1,880.00 | -$2.25 |
| 11/13/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $1,480.00 | $0.00 |
| 11/20/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 11/27/2021 | 36.0 | $37.00 | $55.50 | 36.0 | 0.0 | $1,332.00 | $1,332.00 | $0.00 | $1,332.00 |
| 12/04/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 12/11/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| 12/18/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| Total | | | | 366.0 | 22.0 | $ 14,763.00 | | $ 6,720.00 | $ 8,043.00 |

| Date on Check | Date Check Tendered | Amount Owed | More Than Two Weeks Late (Y/N) | Liquidated Damages |
|---|---|---|---|---|
| 10/22/2021 | 11/30/2021 | $1,877.75 | Y | $3,755.50 |
| 10/29/2021 | 11/30/2021 | $1,480.00 | Y | $2,960.00 |
| 11/5/2021 | 11/30/2021 | $1,877.75 | Y | $3,755.50 |
| 11/12/2021 | 11/30/2021 | $1,480.00 | N | $0.00 |
| 11/19/2021 | never | $1,877.75 | Y | $3,755.50 |
| 11/26/2021 | never | $1,332.00 | Y | $2,664.00 |
| 12/3/2021 | never | $1,877.75 | Y | $3,755.50 |
| 12/10/2021 | never | $1,480.00 | Y | $2,960.00 |
| 12/17/2021 | never | $1,480.00 | Y | $2,960.00 |
| Total | | | | $26,566.00 |
| Total Damages (Unpaid Wages + Liquidated Damages) | | | | $34,609.00 |

25.     Plaintiff Leiva Torres worked a total of nine weeks on The Project. When Cabrera

hired him, he told him that he would be paid once per week at the conclusion of each workweek

(Friday). However, on October 29, 2021, Plaintiff received a check from Cabrera for work during

the week ending October 23, which was already one week late. Cabrera informed Plaintiff Leiva Torres that he could not cash that check and that he needed to return it, which Plaintiff Leiva Torres did. Cabrera then said that Plaintiff Leiva Torres would be paid at the end of each month when Cabrera received payments from DGI. In late November 2021, he received four checks for the weeks ending on October 23 (this replaced the first October 23 check that Plaintiff returned), October 29, November 6, and November 13. He was able to successfully cash all four in late November 2021. Of these four checks, the checks for the weeks ending on October 23, October 30, and November 6 were late because they were tendered more than two weeks after payment was due in violation of Md. Code Ann. Labor & Employment §§ 3-502, 3-505 and 3-507.2, entitling Plaintiff Leiva Torres to liquidated damages.

26.     On or about December 17, Plaintiff Leiva Torres received three checks for the weeks ending November 20, November 27, and December 4. Cabrera informed him that he was only permitted to cash one of the three checks (the one for the week ending November 20) and could not cash the remaining checks until further notice. Plaintiff Leiva Torres was not able to cash the check for the week ending November 20, as the bank rejected it for insufficient funds and he never received notice from Cabrera that there were sufficient funds to cover the remaining two checks (for the weeks ending on November 27 and December 4). On or about December 19, he received two additional checks (for the weeks ending December 11 and 18), but when he presented those to the bank, they were also declined for insufficient funds. These four checks (for the weeks of November 27, December 4, December 11, and December 18) were all given in violation of Md. Code Ann. Labor & Employment §§ 3-502, 3-505 and 3-507.2, entitling Plaintiff Leiva Torres to liquidated damages.

## DAIRIN DAGOBERTO FUNEZ ROSALES

27.     Dairin Dagoberto Funez Rosales' workweeks, hours, wages and damages:

| | A | | | Sum of A | | B | | C | B minus C |
|---|---|---|---|---|---|---|---|---|---|
| Work Week End Date | Hours Worked per Week | Regular Pay Rate | OT Pay Rate | Hours Earned at Regular Rate | Hours Earned at Overtime Rate | Total Amount of Wages Earned | Amount on Employer's Check | Amount Paid by Employer | Amount Still Owing |
| 11/20/2021 | 38.0 | $37.00 | $55.50 | 38.0 | 0.0 | $1,406.00 | $1,406.00 | $0.00 | $1,406.00 |
| 11/27/2021 | 36.0 | $37.00 | $55.50 | 36.0 | 0.0 | $1,332.00 | $1,332.00 | $0.00 | $1,332.00 |
| 12/04/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $1,880.00 | -$2.25 |
| 12/11/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| Total | | | | 156.5 | 5.5 | $ 6,095.75 | | $ 1,880.00 | $ 4,215.75 |

| Date on Check | Date Check Tendered | Amount Owed | More Than Two Weeks Late (Y/N) | Liquidated Damages |
|---|---|---|---|---|
| 11/19/2021 | never | $1,406.00 | Y | $2,812.00 |
| 11/26/2021 | never | $1,332.00 | Y | $2,664.00 |
| 12/3/2021 | 12/27/2021 | $1,877.75 | Y | $3,755.50 |
| 12/10/2021 | never | $1,480.00 | Y | $2,960.00 |
| Total | | | | $12,191.50 |
| Total Damages (Unpaid Wages + Liquidated Damages) | | | | $16,407.25 |

28.     Plaintiff Funez Rosales worked a total of four weeks on The Project, which included the weeks ending November 20, November 27, December 4 and December 11. On or about December 10, 2021, he received three checks for the weeks ending on November 20, November 27, and December 4. One week later (approximately December 17), he received his check for the week ending on December 11. Cabrera informed him he could only cash one of the three checks (the largest check for the December 4 week), but not until December 27, and that he could not attempt to cash the other checks until further notice. Plaintiff Funez Rosales successfully cashed the December 4 check on December 27, 2021. However, this payment was more than two weeks late, entitling Plaintiff to liquidated damages for late payment. Three weeks later, he attempted to cash the remaining three checks, but all were rejected due to insufficient funds. These four checks (for the weeks of November 20, November 27, December 4, and December 11) were all late because

they were either tendered more than two weeks after payment was due or they were never tendered

as Plaintiff could not cash them, entitling Plaintiff Funez Rosales to liquidated damages.

### EDWIN EZEQUIAS LOPEZ VILLAGREZ

29.     Edwin Ezequias Lopez Villagrez's workweeks, hours, wages and damages:

| | A | | | Sum of A | | B | | C | B minus C |
|---|---|---|---|---|---|---|---|---|---|
| Work Week End Date | Hours Worked per Week | Regular Pay Rate | OT Pay Rate | Hours Earned at Regular Rate | Hours Earned at Overtime Rate | Total Amount of Wages Earned | Amount on Employer's Check | Amount Paid by Employer | Amount Still Owing |
| 11/13/2021 | 10.0 | $37.00 | $55.50 | 10.0 | 0.0 | $370.00 | $370.00 | $370.00 | $0.00 |
| 11/20/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $1,880.00 | -$2.25 |
| 11/27/2021 | 36.0 | $37.00 | $55.50 | 36.0 | 0.0 | $1,332.00 | $1,332.00 | $0.00 | $1,332.00 |
| 12/04/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 12/11/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| 12/18/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| Total | | | | 211.0 | 11.0 | $ 8,417.50 | | $ 2,250.00 | $ 6,167.25 |

| Date on Check | Date Check Tendered | Amount Owed | More Than Two Weeks Late (Y/N) | Liquidated Damages |
|---|---|---|---|---|
| 11/12/2021 | 11/20/2021 | $370.00 | N | $0.00 |
| 11/19/2021 | 12/27/2021 | $1,877.75 | Y | $3,755.50 |
| 11/26/2021 | never | $1,332.00 | Y | $2,664.00 |
| 12/3/2021 | never | $1,877.75 | Y | $3,755.50 |
| 12/10/2021 | never | $1,480.00 | Y | $2,960.00 |
| 12/17/2021 | never | $1,480.00 | Y | $2,960.00 |
| Total | | | | $16,095.00 |
| Total Damages (Unpaid Wages + Liquidated Damages) | | | | $22,262.50 |

30.     Plaintiff Lopez Villagrez worked for a total of five weeks and one day on The

Project. On or about November 20, 2021, he received a check for the single day of work during the

week ending on November 13 and successfully cashed it. On or about December 17, 2021, he

received three checks for the weeks ending on November 20, November 27, and December 4.  He

was unable to cash any of these checks due to insufficient funds. Therefore, these three checks

(November 20, November 27, and December 4) were all late, entitling Plaintiff Lopez Villagrez to

liquidated damages. Additionally, Plaintiff Lopez Villagrez never received any checks for the

workweeks ending on December 11 and December 18, making those payments late as well and entitling him to liquidated damages.

31.     Rather than own up to the violations and correct them, Cabrera attempted to pressure Plaintiff Lopez Villagrez into giving up some of his lawfully earned wages. Cabrera told Plaintiff Lopez Villagrez that if he returned the four worthless checks, he (Cabrera) would provide four replacement checks, but only if he accepted a reduced hourly rate of payment ($18 per hour) rather than the agreed-upon rate of $37 per hour. Plaintiff Lopez Villagrez refused to accept this proposal and never received any replacement checks from Cabrera.

## BETO MENDEZ

32.     Beto Mendez's workweeks, wages, hours and damages:

| | A | | | Sum of A | | B | | C | B minus C |
|---|---|---|---|---|---|---|---|---|---|
| Work Week End Date | Hours Worked per Week | Regular Pay Rate | OT Pay Rate | Hours Earned at Regular Rate | Hours Earned at Overtime Rate | Total Amount of Wages Earned | Amount on Employer's Check | Amount Paid by Employer | Amount Still Owing |
| 11/20/2022 | 38.0 | $37.00 | $55.50 | 38.0 | 0.0 | $1,406.00 | $1,406.00 | $0.00 | $1,406.00 |
| 11/27/2022 | 36.0 | $37.00 | $55.50 | 36.0 | 0.0 | $1,332.00 | $1,332.00 | $0.00 | $1,332.00 |
| 12/04/2022 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 12/11/2022 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| Total | | | | 156.5 | 5.5 | $ 6,095.75 | | $0.00 | $ 6,095.75 |

| Date on Check | Date Check Tendered | Amount Owed | More Than Two Weeks Late (Y/N) | Liquidated Damages |
|---|---|---|---|---|
| 11/19/2021 | never | $1,406.00 | Y | $2,812.00 |
| 11/26/2021 | never | $1,332.00 | Y | $2,664.00 |
| 12/3/2021 | never | $1,877.75 | Y | $3,755.50 |
| 12/10/2021 | never | $1,480.00 | Y | $2,960.00 |
| Total | | | | $12,191.50 |
| Total Damages (Unpaid Wages + Liquidated Damages) | | | | $18,287.25 |

33.     Plaintiff Beto Mendez worked for a total of four weeks on The Project. On or about December 24, 2021, he received two checks for the weeks ending on November 20 and December 4. Cabrera informed him that he could cash these checks after December 27, 2021, but when

16

Plaintiff Beto Mendez attempted to do so, both checks were rejected due to insufficient funds. These two checks (for the weeks of November 20 and December 4) were both late because they were never tendered as Plaintiff could not cash them, entitling him to liquidated damages. Plaintiff Beto Mendez never received checks for the weeks ending on November 27 and December 11 and so these payments are also late, entitling him to liquidated damages.

**JOSE FERNANDO ROMERO ARANGO**

34.     Jose Fernando Romero Arango:

| Work Week End Date | A Hours Worked per Week | Regular Pay Rate | OT Pay Rate | Sum of A Hours Earned at Regular Rate | Hours Earned at Overtime Rate | B Total Amount of Wages Earned | Amount on Employer's Check | C Wages Paid by Employer | B minus C Amount Still Owing |
|---|---|---|---|---|---|---|---|---|---|
| 10/23/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 10/30/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| 11/06/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 11/13/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $0.00 | $1,480.00 |
| 11/20/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $0.00 | $1,877.75 |
| 11/27/2021 | 36.0 | $37.00 | $55.50 | 36.0 | 0.0 | $1,332.00 | $1,332.00 | $0.00 | $1,332.00 |
| 12/04/2021 | 48.0 | $37.00 | $55.50 | 42.5 | 5.5 | $1,877.75 | $1,880.00 | $990.00 | $887.75 |
| 12/11/2021 | 40.0 | $37.00 | $55.50 | 40.0 | 0.0 | $1,480.00 | $1,480.00 | $800.00 | $680.00 |
| **Total** | | | | 326.0 | 22.0 | $ 13,283.00 | | $ 1,790.00 | $ 11,493.00 |

| Date on Check | Date Check Tendered | Amount Owed | More Than Two Weeks Late (Y/N) | Liquidated Damages |
|---|---|---|---|---|
| 10/22/2021 | never | $1,877.75 | Y | $3,755.50 |
| 10/29/2021 | never | $1,480.00 | Y | $2,960.00 |
| 11/5/2021 | never | $1,877.75 | Y | $3,755.50 |
| 11/12/2021 | never | $1,480.00 | Y | $2,960.00 |
| 11/19/2021 | never | $1,877.75 | Y | $3,755.50 |
| 11/26/2021 | never | $1,332.00 | Y | $2,664.00 |
| 12/3/2021 | never | $1,877.75 | Y | $3,755.50 |
| 12/10/2021 | never | $1,480.00 | Y | $2,960.00 |
| **Total** | | | | **$26,566.00** |
| **Total Damages (Unpaid Wages + Liquidated Damages)** | | | | **$38,059.00** |

35.     Plaintiff Romero Arango worked a total of eight weeks on The Project. Although he received checks for the weeks ending on October 23, October 30, November 6, November 13, November 20, November 27, December 4, and December 11, he was unable to cash any of them. When he approached Cabrera about the problem, Cabrera asked Plaintiff Romero Arango to return

four checks (the checks for the weeks ending on November 20, November 27, December 4 and December 11). When Plaintiff Romero Arango did so, Cabrera provided him with four replacement checks, paying him for his work at a reduced regular rate of $20 per hour (without an overtime premium for overtime hours), rather than the agreed-upon rate of $37 per hour for straight time and $55.50 for overtime hours. However, Plaintiff Romero Arango was only able to cash two of those replacement checks (in the amount of $800 and $990, respectively) but those payments were only partial and were late, entitling him to liquidated damages. Plaintiff Romero Arango is also entitled to liquidated damages for all the wage payments which were due, but which he never received.

**COUNT I**
**VIOLATIONS OF THE FLSA**
**29 U.S.C. §§ 201 – 216 (b)**
**(PWS, Cabrera and DGI)**

36.    Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

37.    At all times relevant to this Complaint, PWS, Cabrera and DGI were Plaintiffs' "employers" within the meaning of the FLSA.

38.    At all times relevant to this Complaint, Plaintiffs were "employees" of PWS, Cabrera and DGI, within the meaning of the FLSA.

39.    PWS, Cabrera and DGI violated the overtime provisions of the FLSA by knowingly failing to pay Plaintiffs one and one-half times their regular hourly rate for each hour over 40 that they worked during workweeks when Plaintiffs worked overtime hours but received no compensation at all for their work.

40.    PWS, Cabrera and DGI violated the FLSA by knowingly failing to pay Plaintiffs minimum wages during the workweeks when Plaintiffs received no compensation at all for their work.

41.     The actions of PWS, Cabrera and DGI were not undertaken in good faith and/or with a reasonable belief that they were lawful, entitling Plaintiffs to liquidated damages equivalent to their unpaid overtime wages and minimum wages.

42.     PWS, Cabrera and DGI are liable to Plaintiffs under 29 U.S.C. § 216 (b), for unpaid, and illegally withheld straight time, minimum and overtime time wages and an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

**COUNT II**
**VIOLATIONS OF THE MWHL**
**Md. Code Ann., Lab. & Empl. § 3-420**
**(PWS, Cabrera and DGI)**

43.     Plaintiffs repeat and incorporate by reference all allegations of fact set forth above.

44.     At all times relevant to this Complaint, PWS, Cabrera and DGI were "employers" of the Plaintiffs within the meaning of the MWHL.

45.     At all times relevant to this Complaint, Plaintiffs were "employees" of PWS, Cabrera and DGI within the meaning of the MWHL.

46.     PWS, Cabrera and DGI violated the overtime provisions of the MWHL by failing to pay Plaintiffs one and one-half times their regular hourly rate during the workweeks when they worked overtime hours but received no compensation at all.

47.     PWS, Cabrera and DGI violated the minimum wage provisions of the MWHL by failing to pay Plaintiffs the state-mandated minimum wage of $11.75 per hour (*see* Md. Code Ann., Labor & Employment § 413(c)(2)(iv)) during the workweeks when Plaintiffs received no compensation at all.

48.     Defendants did not act in good faith or with a reasonable belief that their actions were lawful, entitling Plaintiffs to liquidated damages.

49.     As a result, PWS, Cabrera and DGI are liable to Plaintiffs pursuant to the MWHL for their unpaid minimum and overtime wages and an additional equal amount as liquidated damages, court costs, attorneys' fees, and any other relief deemed appropriate by the Court.

## COUNT III
## VIOLATIONS OF THE MWPCL
### Md. Code Ann., Lab. & Empl. §§ 3-501 – 3-507.2
### (PWS, Cabrera and DGI)

50.     Plaintiffs repeat and incorporate by reference all allegations set forth above.

51.     PWS, Cabrera and DGI knowingly, willfully and intentionally violated Plaintiffs' rights under the MWPCL by failing to pay them anything at all for many of the workweeks that they performed work on The Project.

52.     PWS, Cabrera and DGI's unlawful failure or refusal to pay the required wages was not the result of a *bona fide* dispute within the meaning of the MWPCL.

53.     As a result of PWS, Cabrera and DGI's failure to pay Plaintiffs the wages that they were legally entitled to be paid, Plaintiffs suffered consequential damages, including but not limited to the inability to pay bills which had come due.

54.     PWS, Cabrera and DGI are liable to Plaintiffs pursuant to the MWPCL for the aforementioned wages, an additional amount equal to double the unpaid wages as liquidated damages, litigation costs, and attorneys' fees.

**COUNT IV**

**VICARIOUS LIABILITY OF BARTON-MALOW FOR VIOLATIONS OF THE MWPCL, LAB. & EMPL. CODE ANN. § 3-507.2**
**(Barton-Malow)**

35.     Plaintiffs repeat and incorporate all allegations of fact set forth above.

36.     At all times relevant to this Complaint, Plaintiffs were employed by PWS, Cabrera and DGI on The Project for "construction services" as that term is defined in Md. Code Ann. Labor & Emp. § 3-901.

37.     At all times relevant to this Complaint, Barton-Malow was the general contractor on The Project.

38.     Directly or through intermediate subcontractors, Barton-Malow entered into a subcontract with DGI, which in turn contracted with a lower-tiered subcontractor, PWS.

39.     Plaintiffs were employed by and performed work for PWS, Cabrera and DGI, but were not paid the wages which they were legally entitled to be paid.

40.     As result of PWS, Cabrera and DGI's failure to pay Plaintiffs the wages they were entitled to be paid, Barton-Malow is vicariously liable to Plaintiffs for their unpaid wages, liquidated damages equal to two times the amount of their unpaid wages under the MWPCL and reasonable attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a)     enter a judgment against Defendants PWS, Cabrera and DGI jointly and severally, and in favor of the Plaintiffs in the amount of their unpaid and illegally withheld overtime and minimum wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216 (b);

b)       enter a judgment against Defendants PWS, Cabrera and DGI, jointly and severally, and in favor of Plaintiffs, based on Defendants' violations of the MWHL in the amount of Plaintiffs' unpaid and illegally withheld minimum and overtime wages and an equivalent sum as liquidated damages;

c)       enter a judgment against all Defendants, jointly and severally, and in favor of Plaintiffs, based on Defendants' violations of the MWPCL in the amount of Plaintiffs' unpaid and illegally withheld wages and liquidated damages equivalent to twice the amount of the unpaid wages; and

d)       award Plaintiffs (as to all Defendants, jointly and severally) their litigation costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216 (b) and Md. Code Ann., Labor & Empl. §§ 3-427 (a) and 3-507.2.

Respectfully submitted,

/s/Omar Vincent Melehy
Omar Vincent Melehy
MD Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Fax: (301) 587-6308
Email: ovmelehy@melehylaw.com
*Attorneys for Plaintiffs*