IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MYNOR MENDEZ CERVANTES,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. TDC-22-337 |
| | * | |
| **PANEL AND WINDOW SERVICES, LLC,** *et al.*, | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | ******* | |

## REPORT AND RECOMMENDATIONS

This "Report and Recommendations" addresses the "Defendant/Cross-Claim Plaintiff Debra's Glass, Inc.'s Motion for Clerk's Entry of Default Judgment Against Defendants/Cross Claim Defendants Panel and Window Services, LLC and Josue Cabrera" ("the Motion") filed by Debra's Glass, Inc. (ECF No. 88). In the Motion, Debra's Glass, Inc. ("DGI") seeks entry of default judgment against Panel and Window Services, LLC and Jose Cabrera ("collectively the Crossclaim Defendants"). (*Id.*). No response has been filed to the Motion, and the time for responding has passed. *See* Local Rule 105.2 (D. Md. 2023). I have considered that fact, and the fact that the Crossclaim Defendants have not taken any action to defend against DGI's Crossclaim during the life of this case.

Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. (ECF No. 93). I do not believe that a hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, I ultimately recommend that "Defendant/Cross-Claim Plaintiff Debra's Glass, Inc.'s Motion for Clerk's Entry of Default Judgment Against Defendants/Cross Claim Defendants Panel

and Window Services, LLC and Josue Cabrera" be **GRANTED IN PART** and **DENIED IN PART**, and that judgment be entered in favor of DGI against the Crossclaim Defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On February 8, 2022, Plaintiffs Mynor Mendez Cervantes, Emilio Leiva Torres, Dairin Rosales, Edwin Lopez Villagrez, Beto Mendez, and Jose Romero Arango ("Plaintiffs") filed a Complaint against Defendants Panel and Window Services, LLC, Josue Cabrera, DGI and Barton-Malow Company, alleging violations of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Md. Code. Ann., Labor & Empl. §§ 3-401 *et seq.*; the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.*; and vicarious liability of Barton-Malow Company for the MWPCL violations, Md. Code Ann., Lab. & Empl. § 3-507.2. (ECF No. 1). The charges stem from failures to pay Plaintiffs the minimum wages and overtime wages due for the work that they performed on a construction project site. Specifically, Defendant Barton-Malow was a general contractor for a project to expand and modernize a convention center in Ocean City, Maryland. In or about June 2020, DGI was a subcontractor hired by Barton-Malow to install panels on the exterior of the convention center. (*Id.*). To that end, DGI subcontracted with Defendant Panel Window Services, LLC ("PWS"), which was owned by Josue Cabrera, to furnish labor on the construction project. (ECF No. 27). Per the agreement between DGI and PWS, PWS was to be onsite to oversee, direct and control the work performed by its employees. Said employees are the Plaintiffs. Pursuant to the subcontract, DGI disbursed construction funds to PWS to pay employees who worked on the convention center project, and Defendants PWS and Cabrera were obligated by the subcontract to further disburse funds to pay Plaintiffs and all laborers who worked on the construction project.

(*Id.*).  According to DGI, it paid PWS in full for all invoices submitted to it by PWS for in or about October 2021 until December 2021, yet PWS and Cabrera failed to pay Plaintiffs their wages due. (*Id.*).  Thus, according to DGI, PWS and Cabrera have breached the subcontract, have been unjustly enriched, have violated the Maryland Construction Trust Statute, and are contractually required to indemnify DGI for all costs, expenses, and attorney's fees incurred due to any liens or claims made by Plaintiffs.  (ECF No. 27).

    **B. Procedural Background**

On April 11, 2022, DGI filed its Answer to the Complaint and a Crossclaim against PWS and Josue Cabrera.  Specifically, DGI alleged that the Crossclaim Defendants are liable for: breach of contract (Count I); contractual indemnification (Count II); unjust enrichment (Count III); and violation of the Maryland Construction Trust Statute, Md. Code, Real Property, §§ 9-201 *et seq.* (2015) (Count IV), (ECF No. 27, "Crossclaim").  According to the docket sheet in this case, on September 7, 2022, summonses were returned as executed by DGI, having been served on the Crossclaim Defendants on August 18, 2022.  (ECF Nos. 58, 59).  According to the Affidavits of Service, however, the process server served a May 24, 2022 letter and copy of the Crossclaim upon the Crossclaim Defendants on August 22, 2022.  (*Id.*).  Thus, these documents suggest that the deadline for Crossclaim Defendants PWS and Cabrera to file a responsive pleading within the 21-day period provided by Federal Rules of Civil Procedure 4 and 12(a)(1)(A)(i) was September 12, 2022.

On September 9, 2022, DGI filed a motion for Clerk's entry of default against the Crossclaim Defendants pursuant to Fed. R. Civ. P. 55(a), in which it represented that it filed its Answer and Crossclaim on April 11, 2022, "with service made to the last known address [of PWS and Cabrera]." (ECF No. 60).  That motion for entry of default also contained the identical

3

affidavits of service appended to ECF Nos. 58, 59, which reflect that service of process was actually effectuated on August 22, 2022. (*Id*.). The Clerk of the Court granted the motion and entered an order of default. (ECF No. 61).

On December 13, 2022, a settlement conference was held before the undersigned. The only parties present were Plaintiffs and Defendants DGI and Barton-Malow. (ECF No. 72). On December 21, 2022, following a successful mediation with Plaintiffs and Defendants DGI and Barton-Malow, the case was transferred to the undersigned, on a limited basis, "for approval of the FLSA Settlement Agreement/Dismissal of the case." (ECF Nos. 73, 74).[1] On January 6, 2023, the undersigned reviewed and approved of the Settlement Agreement, finding it to be a fair, reasonable and equitable compromise of the disputed facts and claims, including reasonable attorneys' fees and costs. Accordingly, Plaintiffs' action against Defendants Barton-Malow and DGI was terminated. (ECF Nos. 76, 77).[2]

On April 26, 2023, DGI filed its motion for default judgment as to Crossclaim Defendants PWS and Josue Cabrera. (ECF No. 88). In support of its motion, DGI argued that neither PWS nor Cabrera timely responded to the Crossclaim, nor did they move to vacate the Clerk's entry of default within thirty days after its entry. (ECF No. 88, p. 2).

On November 16, 2023, the Court issued an order directing DGI to serve a copy of its motion for entry of default, Clerk's Order of Default, and the Motion upon PWG and Josue Cabrera. (ECF No. 91). On December 15, 2023, DGI filed an Affidavit of Service. (ECF No. 92). Namely, after good faith attempts were made to effectuate service on PWG, service was made

---

[1] The parties to the settlement consented to the undersigned's jurisdiction only to review and approve the settlement. (ECF No. 73). Neither Defendant DGI nor Josue Cabrera or Panel & Windows Services, LLC consented to my jurisdiction for any other purpose.

[2] Previously, Plaintiffs filed a motion for the Clerk of the Court to enter default against Josue Cabrera and Panel & Windows Services, LLC, which was granted. (ECF Nos. 14, 19). In addition, Barton-Malow previously asserted a crossclaim against PWS and Josue Cabrera, which claims were later voluntarily dismissed. (ECF Nos. 41, 42, 86, 87).

upon the Maryland State Department of Assessments and Taxation on December 8, 2023 in accordance with Maryland Rule 3-124(o)(iii).  (ECF No. 92-1).  In relation to Cabrera, per the Affidavit of Due Diligence, (ECF No. 92-2), multiple good faith attempts to effectuate service were made, and were all unsuccessful.  In turn, as evidenced by an Affidavit, service on Cabrera was effectuated in accordance with Fed. R. Civ. P. 5(b)(2)(C), by mailing the documents to his last known address on December 9, 2023.  (ECF No. 92-3).

In the Motion, DGI seeks judgment in the amount of $188,700, further broken down as follows:

> (a) $84,700, payable to Plaintiffs Mynor Mendez Cervantes, Emilio Leiva Torres, Dairin Rosales, Edwin Lopez Villagrez, Beto Mendez and Jose Romero Arango, as identified in the Settlement Agreement as unpaid wages and liquidated damages related thereto;
>
> (b) $104,000 in attorneys' fees and costs ($97,000 and $7,000, respectively) incurred in resolving Plaintiffs' claims.

(ECF No. 88).  In support of the Motion, DGI appended the following documents: (a) Subcontractor's Partial Release of Liens and Claims dated November 5, 2021; (b) a copy the Settlement Agreement; and (c) a copy of an affidavit, executed by DGI's President, Debra Zarfoss. (ECF Nos. 88-2, 88-4, 88-6).

To date, Panel and Windows, LLC has never filed an Answer to the Complaint or to the Crossclaim, nor has it otherwise filed any pleading in this case.  To date, Josue Cabrera has never filed an Answer to the Complaint or to the Crossclaim, nor has it otherwise filed any pleading in this case.

## II. DISCUSSION

### A. Jurisdiction

As a preliminary matter, before deciding liability against PWS and Josue Cabrera, the

undersigned has an independent obligation to ensure that the district court has subject matter jurisdiction. *See Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); Fed. R. Civ. P. 12(h)(3).

In this case, diversity of the parties is what gives the district court subject matter jurisdiction, as DGI is a Pennsylvania company with its principal place of business in Dallastown, Pennsylvania. PWS is a limited liability company organized and existing under Maryland law, and Mr. Cabrera is a resident of Maryland. The amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). In addition, despite the fact that the FLSA action has been resolved, I recommend that the district court exercise its discretion and decide to continue to exercise supplemental jurisdiction over DGI's state law claims against PWS and Josue Cabrera. *See Hunt v. Branch Banking & Tr. Co.,* 480 F.App'x 730, 732 (4th Cir. 2012).

### B. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed. R. Civ. P. 55(a)–(b); *see also Disney Enters., Inc. v. Delane*, 446 F. Supp. 2d 402, 405-06 (D. Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F.

Supp. 2d 418, 422 (D. Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

Approximately one year and five months have passed since Crossclaim Defendants PWS and Cabrera received the Crossclaim. (ECF Nos. 58, 60). More one year and 4 months have passed since the Order of Default was issued, and more than one month has passed since the Crossclaim Defendants were served with copies of the motion for default, Clerk's Order entering default, and the instant Motion. (ECF Nos. 92-2, 92-3). To date, neither PWS nor Mr. Cabrera have filed an opposition nor otherwise defended against this case. DGI has filed proof of service establishing that PWS and Mr. Cabrera were properly served with the aforementioned pleadings. (*See* ECF Nos. 58-60, 88, 92-2, 92-3). Therefore, I find that both PWS and Mr. Cabrera have been available to respond or defend against this case, yet have failed to do so. Accordingly, I recommend that default judgment be entered.

### C. Choice of Law

It is well established that in a federal diversity case, a court must apply the choice of law rules applicable in the forum state. *Klaxon v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496-97 (1941). In a contract action, Maryland courts typically apply the law of the jurisdiction where the contract was made, pursuant to the doctrine of *lex loci contractus*. *Allstate Ins. Co. v. Hart*, 327 Md. 526, 611 A.2d 100 (1992).

In this case, the Crossclaim does not identify where the agreement was executed between DGI and PWS. (Crossclaim, ¶ 17). However, the forms entitled "Subcontractor's Partial Release

of Liens and Claims" executed by Josue Cabrera as owner of PWS provide:

> As a condition of the payment, SUBCONTRACTOR agrees and represents that: (1) the subcontractor has paid all of its sub-subcontractors and suppliers from payments previously received for work done and/or materials furnished the amounts to which they are entitled; (2) all laborers have been paid in accordance with applicable law, including prevailing wage and employee classification laws; (3) all labor, material, equipment, services and other items, including payroll, sales and use taxes, arising from the SUBCONTRACTOR's work have been paid or will be paid through the REQUISITION DATE promptly from this partial payment; and (4) SUBCONTRACTOR is aware of no actual or threatened bond claim or mechanic's lien which might be asserted by any of its sub-subcontractors, laborers or suppliers. SUBCONTRACTOR agrees to indemnify and old (sic) harmless DEBRA's GLASS, INC., and to reimburse DEBRA's GLASS, INC., GENERAL CONTRACTOR and PROJECT OWNER for any costs, expenses, and attorney's fees incurred due to any liens or claims made by any of its sub-subcontractors, laborers, or suppliers related to the PROJECT for whose work and material SUBCONTRACTOR has been previously paid.

(ECF Nos. 27-1, 88-2). These forms were signed by Josue Cabrera and notarized in Maryland. (*Id.*). Accordingly, the undersigned infers that PWS and Mr. Cabrera intended to be bound by Maryland law. I recommend that the district court so find.

**D. Liability**

As to liability, a district court accepts as true the well-pled allegations in a complaint or other operative pleading, other than those pertaining to damages. *Lawbaugh*, 359 F.Supp.2d at 422; *see also See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed. R. Civ. P. 8(b)(6).

    1. Count I – Breach of Contract

Count I of the Crossclaim asserts a claim of breach of contract. (Crossclaim, ¶¶ 16-33).

In order for DGI to establish that PWS and Mr. Cabrera breached a contract, DGI must prove that PWS and Mr. Cabrera "owed [DGI] a contractual obligation and that the [Crossclaim

Defendants] breached that obligation." *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001); *see also RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 443 (Md. 2010) (finding that breach of contract requires showing of an obligation and a failure of a party to meet such obligation). In addition, if a Crossclaim Plaintiff establishes proof of liability, that litigant may recover damages for: "1) the losses proximately caused by the breach; 2) that were reasonably foreseeable; and 3) that have been proven with reasonable certainty." *Hoang v. Hewitt Ave. Assocs., LLC*, 936 A.2d 915, 934 (Md. 2007).

According to the allegations set forth in the Crossclaim, DGI claims that PWS was a subcontractor hired by it, a general contractor, to supply labor on a construction project located in Ocean City, Maryland. In order to perform the work on that contract, PWS entered into a subcontract with DGI agreeing to furnish labor on the project. DGI and PWS executed that contract, and PWS furnished labor on the project at least during the period of in or about October 2021 until in or about February 2022. As a condition of receiving payment from DGI, PWS had to submit executed "Subcontractor's Partial Release of Liens and Claims" ("Release Forms"), whereby PWS represented that it had used funds received from DGI to pay all of its laborers. (ECF Nos. 27-1, 88-2). The forms are for requisition dates of 10/22/21, 10/28/21, 11/5/21, 11/11/21, 11/19/21, and reflect total payments to PWS in the amount of $124,020. PWS failed and refused to pay monies due to Plaintiffs. (Crossclaim, ¶¶ 22-24; ECF Nos. 27-1, 88-2).

Because I am required to accept as true the unchallenged facts of the Crossclaim, *see Lawbaugh*, 359 F.Supp.2d at 422, I find that DGI has established that PWS was contractually obligated to pay Plaintiffs for the labor provided on the Ocean City, Maryland construction project, but PWS breached this obligation by failing to pay any of the Plaintiffs. (*Id.*). Accordingly, I find that DGI has established PWS' and Mr. Cabrera's liability for breach of contract, as set forth in

Count I.

    2. <u>Count II – Contractual Indemnification</u>

Count II of the Crossclaim alleges that the Release forms, which required as a condition precedent to payment that PWS pay its laborers, are valid contracts.

As a general matter, releases "are contracts [and] are construed and applied according to the rules of contract law." *Owens–Illinois, Inc. v. Cook,* 386 Md. 468, 495–96, 872 A.2d 969 (2005) (citations omitted). In addition, "it is well settled that a release is to be construed according to the intent of the parties and the object and purpose of the instrument, and that intent will control and limit its operation." *Id.* (citations and quotation marks omitted).

Moreover, it is well settled that "a right of indemnification can arise by express agreement or by implication." *Hanscome v. Perry*, 75 Md. App. 605, 615, 542 A.2d 421 (1988). Furthermore, "[a]s with any contract clause, a court construes language of an indemnification provision in accordance with its customary, ordinary, and accepted meaning." *Bd. of Trs. Cmty. Coll. of Balt. Cnty. v. Patient First Corp.,* 444 Md. 452, 466, 120 A.3d 124 (2015) (citing *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 300-301, 844 A.2d 460 (2004)).

As set forth above, the Release Forms provide:

> As a condition of the payment, SUBCONTRACTOR agrees and represents that. . . (2) all laborers have been paid in accordance with applicable law, including prevailing wage and employee classification laws. . . and (4) SUBCONTRACTOR is aware of no actual or threatened bond claim or mechanic's lien which might be asserted by any of its sub-subcontractors, laborers or suppliers. SUBCONTRACTOR agrees to indemnify and old (sic) harmless DEBRA's GLASS, INC., and to reimburse DEBRA's GLASS, INC., GENERAL CONTRACTOR and PROJECT OWNER for **any costs, expenses, and attorney's fees incurred due to any liens or claims made by any of its sub-subcontractors, laborers, or suppliers related to the PROJECT for whose work and material SUBCONTRACTOR has been previously paid.**

(ECF Nos. 27-1, 88-2)(emphasis supplied).

I find that the Release Forms were signed by Josue Cabrera, and constitute valid contracts. I further find that the pertinent language in the Release Forms is straightforward. Specifically, the Release Forms provide that PWS and Cabrera will indemnify DGI for any costs, expenses, and attorney's fees incurred due to any claims made by the sub-subcontractors related to the construction project. Thus, the indemnification provision shall be construed to obligate PWS and Mr. Cabrera to indemnify DGI for any costs, expenses, and attorney's fees incurred due to the Crossclaim Defendants' failure to pay Plaintiffs for the labor provided on the construction project. Accordingly, I find that DGI has established PWS' and Mr. Cabrera's liability for the claim set forth in Count II.

3. Count III – Unjust Enrichment

Count III of the Crossclaim alleges that the Crossclaim Defendants are liable for unjust enrichment. (Crossclaim, ¶¶ 43-47). When a written contract exists been the parties, the law is clear that a party cannot recover under the quasi-contractual theory of unjust enrichment. *See, e.g., Froelich v. Erickson,* 96 F. Supp. 2d 507, 524 (D. Md. 2000).

Accordingly, because DGI has met its burden to establish that PWS and Mr. Cabrera are liable for breach of contract, DGI may not rely on this theory of recovery. I recommend that the district court deny the Motion as to Count III.

4. Count IV – Maryland Construction Trust Statute

Count IV of the Crossclaim alleges that the Crossclaim Defendant Josue Cabrera is liable for violation of the Maryland Construction Trust Statute. (Crossclaim, ¶¶ 48-57).

As is relevant here, the Maryland Construction Trust Statute provides that:

> (b)(1) Any money paid under a contract by an owner to a contractor, or by the owner or contractor to a subcontractor for work done or

> materials furnished, or both, for or about a building by any subcontractor, shall be held in trust by the contractor or subcontractor, as trustee, for those subcontractors who did work or furnished materials, or both, for or about the building, for purposes of paying those subcontractors.
>
> (2) An officer, director, or managing agent of a contractor or subcontractor who has direction over or control of money held in trust by a contractor or subcontractor under paragraph (1) of this subsection is a trustee for the purpose of paying the money to the subcontractors who are entitled to it.

Md. Code, Real Property, §§ 9-201(b)(1), (b)(2).

According to the Crossclaim, construction funds were paid to Mr. Cabrera, the principal owner of PWS for the labor provided by Plaintiffs on the Ocean City, Maryland. construction project. The law thus required him to hold such construction funds in trust for PWS employees who worked on the convention center project. Instead of so doing, the Crossclaim alleges that Mr. Cabrera used these funds to pay himself, PWS, and/or others who were not entitled to payment from the construction-related monies that DGI paid to PWS. The Crossclaim further alleges that Mr. Cabrera's wrongful disbursement of the monies has caused DGI to suffer damages. (Crossclaim, ¶¶ 49-57).

Accepting as true the unchallenged facts of the Crossclaim, DGI has shown that Mr. Cabrera had a legal obligation to hold in trust and later disburse the construction-related monies that PWS received from DGI to pay Plaintiffs for their labor on the Project. In addition, the unchallenged facts establish that Mr. Cabrera breached his obligation to pay Plaintiffs. Accordingly, I find that DGI has established Mr. Cabrera's liability on Count IV.

### E. Damages

Although liability has been established, any allegation concerning the amount of damages is not deemed admitted just because a defendant fails to deny in a required responsive pleading. Fed. R. Civ. P. 8(b)(6). "With respect to a default judgment, '[c]laims for damages must generally

be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, Civ. No. ELH-11-832, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011). If the record supports the damages requested, however, then a court may award damages without a hearing. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, Civ. No. NKM-09-0004, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that no evidentiary hearing on damages is needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, Civ. No. MFU-404-11, 2005 WL 3435030, at *2 (W.D. Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required"). The type and amount of damages that may be entered as a result of a party's default are limited to the amount that is demanded in a party's pleadings. Fed. R. Civ. P. 54(c).

   1. *Unpaid Wages and Liquidated Damages*

DGI asserts that Crossclaim Defendants PWS and Cabrera owe $84,700 in unpaid wages and liquidated damages as a result of their failure to pay wages to Mynor Mendez Cervantes, Emilio Leiva Torres, Dairin Funez Rosales, Edwin Lopez Villagrez, Beto Mendez, and Jose Romero Arango. In support of the amount sought, DGI relies upon three executed Release Forms, an affidavit from DGI's president, and a settlement agreement as executed by DGI and the Plaintiffs. (ECF Nos. 27-1; 76-1; 88-2; 88-4, pp. 14-22; 88-6). The settlement agreement reflects that settlement payments were to be distributed as follows:

   a) $8,700 to Mynor Mendez Cervantes;

   b) $24,000 to Emilio Leiva Torres;

   c) $8,700 to Dairin Funez Rosales;

      d) $11,200 to Edwin Lopez Villagrez;

      e) $8,100 to Beto Mendez; and

      f) $24,000 to Jose Romero Rango.

(*Id.*).[3]

As held previously, DGI has established that PWS was contractually obligated to pay Plaintiffs for the labor provided on the Ocean City, Maryland construction project, but PWS breached this obligation by failing to pay any of the Plaintiffs. In addition, the Court has previously held that the Release Forms signed by Josue Cabrera constitute valid contracts with indemnification provisions that obligated PWS and Mr. Cabrera to indemnify DGI for any costs incurred due to the Crossclaim Defendants' failure to pay Plaintiffs for the labor provided on the construction project.

Thus, upon evaluation of the three Release Forms, the affidavit of DGI's president, and the settlement agreement, I find that DGI has the right to collect monies from the Crossclaim Defendants PWS and Josue Cabrera in the amount of $84,700. Accordingly, I find that the award of this category of damages is appropriate.[4]

    2. *Attorney's Fees and Costs*

DGI also seeks reimbursement for the attorney's fees and costs paid to Plaintiffs' counsel in the amounts of $97,000 and $7,000, respectively. (ECF Nos. 76, pp. 6-12; 88-4, pp. 7-13). Specifically, DGI argues that it incurred damages in the form of the costs and attorneys' fees that Plaintiffs' counsel has incurred in connection with prosecuting the FLSA and MWHL claims brought by Plaintiffs. In support of its argument, DGI relies upon an affidavit from DGI's

---

[3] Both the FLSA and the MWHL provide that if an employer violate these statutes, the employer shall be liable to the employee for the amount of unpaid wages, plus an equal amount of "liquidated damages." *See* 29 U.S.C. § 216(b); Md. Code. Ann., Lab. & Empl. § 3-427(d)(1)(ii).
[4] I further hold that the wage and liquidated damages amount of $84,700 is less than the $124,020 that PWS was actually paid per the requisition requests submitted by it. *See* Crossclaim, ¶¶ 22-24; ECF Nos. 27-1, 88-2.

14

president and the settlement agreement, which sets forth the requested amounts. (ECF Nos. 76-1, p. 2; 88-1, p. 6; 88-4, p. 15; 88-6).

Because Plaintiffs have settled their FLSA, and MWHL claims, I find Plaintiffs were entitled to reasonable attorneys' fees under the law.[5] In addition, as held previously, PWS was contractually obligated to pay Plaintiffs for the labor provided on the Ocean City, Maryland construction project, but PWS breached this obligation by failing to pay any of the Plaintiffs. Relatedly, I have previously found that, pursuant to the Release Forms, DGI was contractually entitled to the indemnification from PWS and Cabrera related to PWS' failure to pay its laborers, which explicitly includes attorneys' fees and costs. Put another way, DGI has established PWS' and Mr. Cabrera's liability for Count II and is entitled to reasonable damages related thereto.

I participated in the settlement conference and have examined the settlement agreement, the affidavit, and Release Forms. I find that the costs and attorney's fees of the prevailing party (Plaintiffs) are fair and reasonable. *See Robinson v. Equifax Services, LLC*, 560 F.3d 235, 244 (4th Cir. 2009)(analyzing the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714,717-18 (5th Cir. 1974). Accordingly, I recommend and award of reasonable attorney's fees and costs in the amounts requested.

### III. CONCLUSION

In sum, I respectfully recommend that the district court:

1) **GRANT** DGI's motion for default judgment, (ECF No. 88), as to Counts I, II and IV of its Crossclaim;

2) **DENY** DGI's motion as to Count III of its Crossclaim; and

---

[5] *See* 29 U.S.C. § 216(b); Md. Code. Ann., Lab. & Empl. §§ 3-401 et seq., which are fee shifting statutes that entitle the prevailing party to recovery attorney's fees. In addition, 28 U.S.C. § 1920 provides for reimbursement of costs incurred in connection with litigation.

3) **ORDER** that judgment be entered in favor of DGI and against Crossclaim Defendants PWS and Cabrera in the amount of $188,700.

Date: February 5, 2024                            /s/
                                              The Honorable Gina L. Simms
                                              United States Magistrate Judge